IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LANNY J. WINSETT, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case. No.: 6:06-CV-1893-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Lanny J. Winsett, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Proceedings Below**

Plaintiff filed his application for DIB and SSI benefits on March 18, 2004. (R. 51-53, 202). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on October 21, 2005. (R. 13-28, 214-31). In his December 23, 2005 decision, the ALJ determined that Plaintiff was not eligible for DIB or SSI benefits because he failed to meet the disability requirements of the Social Security Act and retained the residual functional capacity to perform a restricted range of work at the light exertional level. (R. 13, 27). Plaintiff requested

review of the ALJ decision by the Appeals Council, and after the Appeals Council denied Plaintiff's request for review on August 4, 2006 (R. 5-12), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

Plaintiff has alleged that he became unable to work on December 24, 2002 due to diabetes, shoulder and back problems, symptoms of arthritis in his hands, and severe depression. (R. 59, 66). At the time of the ALJ's decision, Plaintiff was forty-seven years old (a "younger individual 45-49" according to 20 C.F.R. § 416.963) with a high school education and past relevant work experience as a salesman, stocker, and laborer. (R. 16, 60, 65, 78, 227-28).

At the December 21, 2005 hearing, Plaintiff testified about his depression, anxiety and anxiety attacks, back and shoulder pain, swelling and pain in his joints, arthritic-type pain in his fingers, and diabetes, the symptoms of which force him to spend significant amounts of time lying down. (R. 217-20, 225-26). Although medication helps his depressive symptoms to a degree, Plaintiff complained that he continues to have severe anxiety symptoms, and his medication slows him down. (R. 221-23). Plaintiff testified that the medication makes it difficult for him to work: "I have a real nervous complex around people. I don't, I just don't do good around people as far as being able to talk with them and I don't believe I could receive instructions and carry them out completely. As I say, just constantly worrying. I would start working and try to, I don't know, try to overdo things, become a nervous wreck. I just don't think I could and I truly don't believe I could." (R. 222-23). Additionally, he believes that his ability to work is diminished by the fact that he "cannot stand" being around people.(R. 220).

Plaintiff also testified about his pain and ability to perform daily activities. He stated that his mother does most of his cooking and cleaning (R. 220-21), and he has previously stated that he

requires assistance with personal needs due to limited range of motion in his left upper extremity. (R. 68-71). According to Plaintiff, his pain wakes him up at night; he performs household chores on only a limited basis; he often cannot play guitar due to pain in his fingers; he has to reread passages in books because he cannot remember what he read; he does not socialize due to depression, anxiety, and nervousness; he has difficulty maintaining concentration; he can only perform a task for half an hour to an hour; he is easily discouraged; and he has trouble keeping his blood sugar level regulated consistently. (R. 68-71, 73-76).. With respect to his capacity for physical exertion, Plaintiff believes that he can stand for half an hour, walk for fifteen minutes, and sit for fifteen minutes. (R. 89).

## II.   ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner

finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

In this case, the ALJ determined that Plaintiff has severe impairments of diabetes mellitus, status post fracture of right ankle, degenerative joint disease of bilateral shoulders with status post labral tear of right shoulder in January 2001, low back pain, depression, and anxiety, although he found that Plaintiff's impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 27). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset. (R. 27). Although he found that Plaintiff is unable to perform any of his past relevant work, the ALJ determined that, even considering Plaintiff's significant non-exertional limitations, he still retains the residual functional capacity to perform work at the light exertional level with minimal restrictions. (R. 27).

According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (R. 22-23, 27). Specifically, the ALJ found that although Plaintiff has been diagnosed with underlying conditions,

none of those conditions are of the severity that they could reasonably be expected to give rise to his alleged pain and other symptoms. (R. 23).

The ALJ called John M. Long, Jr., a vocational expert ("VE") who was present throughout the hearing and familiar with Plaintiff's background, to testify. (R. 227-30). The ALJ asked Mr. Long to assume hypothetically that an individual with Plaintiff's relevant vocational characteristics:

> could do simple but not complex tasks. Can maintain attention and concentration for two hours at a time and complete an eight hour work day provided all customary breaks are given. Contact with the general public, coworkers, and supervisors should be minimal and casual. Needs a job with minimal stress. Supervision should be direct and nonconfrontational. Changes to the work setting should [be] gradual and well explained. Work demand should be mostly routine. This hypothetical person could occasionally lift and carry 20 pounds frequently, lift and carry 10 pounds, stand and walk for approximately six hours in an eight hour day, and sit for approximately six hours in an eight hour day. Would probably do best in a work environment that is free of dust, fumes, and gases, and is temperature and humidity controlled. Is unable to work around unprotected heights or dangerous or moving equipment. No ladders, ropes, or scaffolds. Can only frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. And would probably do best in a job where he did not have to push, pull, bilaterally with either the lower or upper extremities.

(R. 228). In response to that hypothetical, Mr. Long indicated that such an individual could perform work at the light level such as an assembly job, inspector checker, and hand packing job, and that those type of jobs exist in significant numbers in the regional and national economies. (R. 229). Thus, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and, therefore, Plaintiff was not under a disability at any time through the date of the decision. (R. 27-28).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative,

remanded for further consideration.  (Doc. # 9, at 8).  Specifically, Plaintiff argues that the ALJ decision is not supported by substantial evidence and improper legal standards were applied because: (1) the ALJ acknowledged Plaintiff's treating psychiatrist's opinion but inappropriately gave it little or no weight without citing any contradictory medical opinion; (2) the ALJ's RFC finding that Plaintiff can perform a restricted range of light work is not supported by any medical opinion; and (3) the ALJ improperly rejected Plaintiff's subjective allegations without identifying the allegations being rejected or the contradictory evidence. (Doc. # 11).

**IV.**   **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be

affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

Against that backdrop of applicable standards, the court finds that the ALJ's decision is due to be affirmed. The court will address each of Plaintiff's arguments in turn.

### A.     Weight Given to the Opinion of Plaintiff's Treating Psychiatric Sources

Plaintiff first argues that the ALJ improperly rejected the "Medical Assessment Form (Mental)" (the "Form") completed by his treating psychiatrist Dr. S. Begum and his therapist Amy Roberson who opined that, due to major depression and anxiety, Plaintiff is occupationally: (1) severely impaired in his ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stress, behave in an emotionally stable manner, and demonstrate reliability; and (2) moderately impaired in his ability to function independently and maintain attention/concentration. (Doc. # 11, at 20-21 (citing R. 200-01)). Although Plaintiff asserts nine specific objections to the ALJ's rejection of Dr. Begum and Ms. Roberson's medical opinion when formulating his RFC (Doc. # 11, at 14-21), Plaintiff's contentions can be summarized as follows: the ALJ based his assessment on mere speculation and improper inferences, misunderstood the evidence, failed to justify or support his decision, and failed to properly evaluate the opinion in light of all the evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and

7

treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). Although an ALJ can consider opinions from acceptable medical sources on such issues as a claimant's RFC and whether a claimant is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

Moreover, the opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). If the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

A review of the ALJ's decision reveals his thorough analysis of the evidence submitted by Dr. Begum and Ms. Roberson and a clear articulation of the reasons why he accorded their Form "little or no weight." (R. 23-24). First, the ALJ properly concluded that Dr. Begum and Ms. Roberson's Form assessment lacks objective evidentiary support and, in fact, is inconsistent with the other medical evidence in the record, including their own treatment notes. (R. 25, 200-01). As

8

the ALJ noted, Dr. Begum and Ms. Roberson provided no clinicals or test results to substantiate the boxes checked on the Form opining that Plaintiff is severely limited with respect to many mental/emotional capabilities impacting his ability to work. (R. 25, 200-01). In any event, the opinions expressed in the Form assessment are inconsistent with Dr. Begum and Ms. Roberson's own treatment notes. (R. 23, 143-49). For example, when Ms. Roberson saw Plaintiff a few months prior to the completion of the Form, she noted that Plaintiff had no problems with orientation, thought, judgment, withdrawal, decompensation, speech control, dress/hygiene, delusions or hallucinations. (R. 23, 144). Those treatment notes are simply not consistent with her later evaluation of severe impairments.

The ALJ also properly noted that Dr. Begum relied heavily upon Plaintiff's subjective reports of symptoms over objective evidence and "uncritically accept[ed] as true most, if not all, of what [Plaintiff] reported." (R. 23). Although Plaintiff believes that in so concluding, the ALJ improperly substituted his own speculation for medical evidence, the ALJ was not incorrect to make such an observation about Plaintiff's credibility. Indeed, it is appropriate for an ALJ to note if a treating physician's opinion is based solely on subjective complaints without any objective evidentiary support. *See e.g., Young v. Secretary of Health and Human Serv's.*, 925 F.2d 146, 151 (6th Cir. 1990).

Moreover, when the conclusions expressed by Dr. Begum and Ms. Roberson in the Form (together with the subjective complaints made by Plaintiff) are evaluated in light of all the record evidence, their inconsistency with other objective evidence is apparent. The sum of the evidence demonstrates that despite an increase in his medication (R. 21, 147), Plaintiff's treatment for depression has been conservative, routine, and generally successful in controlling his symptoms. (R.

23, 143, 198). In June 2005, Dr. Begum found that Plaintiff was responding well to his prescribed medication. (R. 21, 23, 147, 198).[1] From September 2004 to July 2005, Plaintiff visited the Mental Health Center roughly *only* once a month (R. 23, 194-99), and he has never been hospitalized or received emergency treatment for depression (R. 23, 141-50, 194-99). Contrary to Plaintiff's assertions, it was entirely proper for the ALJ to consider the extent, type, and frequency of mental health treatment Plaintiff received to relieve his symptoms when evaluating the credibility of Plaintiff's subjective complaints and the reliability of any medical opinion based solely on those complaints. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)(2006); *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (noting that the record did not show that claimant received any significant medical treatment during late 1986, with the exception of regular visits to receive vitamin B12 shots); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984)(recognizing that the failure to seek treatment for a period of time is a factor which may be considered by the ALJ in evaluating subjective complaints of pain).

Moreover, Plaintiff's suggestion that the ALJ inappropriately acted as "both judge and physician" by discounting what he terms the "only opinion evidence of record regarding [Plaintiff's] mental impairments" is simply off the mark. Such an argument was rejected by the Eleventh Circuit in *Green v. Social Sec. Admin.*, 223 Fed.Appx. 915, 2007 WL 1265988 (11th Cir. 2007). In *Green*, the Eleventh Circuit affirmed this court's finding that an ALJ who rejects a treating physician's opinion as "inconsistent with objective medical evidence in the record" - even if it is the only medical opinion in the record regarding that impairment - has not improperly "substitute[d] his

---

[1] Indeed, Plaintiff even admits that his depression and anxiety improved on medication. (Doc. # 11, at 19).

judgment for that of [a treating physician]." *Green*, 223 Fed.Appx. at 924, 2007 WL 1265988, at *7. Just as in *Green,* this court finds that even *assuming* that Dr. Begum and Ms. Roberson's Form is the *sole* piece of mental impairment evidence in the record that refutes the ALJ's RFC finding that Plaintiff can perform a restricted range of light work, the ALJ could, and properly did (for the reasons outlined above), discount that opinion as inconsistent with the other record evidence. An ALJ is not required to credit a medical opinion that contradicts what he determines to be the correct RFC for a claimant even when it is the only opinion in the record.

Finally, the court is not persuaded by Plaintiff's argument that rejection of a treating physician's opinion requires that the ALJ recontact that physician. (Doc. # 11, at 23). Although recontacting a treating physician may be the proper action to take if the ALJ needs clarification as to that physician's opinion, *see* SSR 96-5p, 61 Fed. Reg. 34471, 34472 ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."), that is not what occurred here. In this case, the ALJ needed no clarification or explanation of the reasons for Dr. Begum and Ms. Roberson's conclusions on the Form – the ALJ had before him a well-developed medical record with respect to Plaintiff's mental impairments,[2]

---

[2] Moreover, the court rejects Plaintiff's contention that the ALJ should have developed the record more fully with respect to a notation in his file that he might have obsessive compulsive disorder. (Doc. # 11, at 19) (citing R. 164)). In fact, the "statement" to which Plaintiff refers was nothing more than a notation by a nurse, who is not an acceptable medical source. (R. 164; 20 C.F.R. §§ 404.1513(d), 419.913(a)(2006)(listing acceptable medical sources, such as licensed physicians and licensed or certified psychologists as persons who can provide evidence as to whether a claimant has a medically determinable impairment)). The medical record is devoid of any other references to obsessive compulsive disorder and thus, in the absence of an actual diagnosis, a noted limitation from an acceptable medical source, or an allegation of disabling condition, the ALJ was not required to consider, nor to develop the record, as to the possibility of that impairment. *See e.g., James v. Barnhart*, No. 05-16238, 2006 WL 995363, at * 2, n.2 (11th Cir. Apr. 17, 2006)(no requirement to

including Dr. Begum and Ms. Roberson's own treatment notes. *See* SSR 96-2p, 61 Fed. Reg. 34490, 34491 (1996) ("Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."). Thus, under the circumstances in this case, it was not improper for the ALJ to conclude, without recontacting the sources, that Dr. Begum and Ms. Roberson's Form was due "little or no weight." (R. 23-24).[3]

### B. The ALJ's RFC Finding

Next, Plaintiff argues that the ALJ's RFC finding that he can perform a restricted range of light work is not supported by substantial evidence or any medical opinion. (Doc. # 11, at 27- 29). Plaintiff characterizes the ALJ's RFC assessment as "a cursory summary of some of the facts, then flat[] state[ment of] his conclusions, without building any logical bridge between them." (Doc. # 11, at 29). Specifically, Plaintiff takes issue with the ALJ's decision to give "substantial weight" to the opinion of a consultative physician, Dr. Samia Moizuddin, which the ALJ found to be consistent with the objective medical evidence. (R. 25, 132-35). A review of the ALJ's process of determining

---

elaborate more on claimant's allegations of obesity where there was no allegation of disabling obesity, and no notations of limitations related to obesity).

[3] The court acknowledges that the ALJ's analysis of Plaintiff's impairments included an incorrect reference to two Global Assessment Functioning ("GAF") scores when, in fact, the two scores were duplicates. (R. 25, 146, 199). Indeed, the ALJ's citation was not only wrong, but it was also inappropriate given the Commissioner's position not to endorse the GAF scale for "use in the Social Security and SSI disability programs" because GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000). Nonetheless, the court finds that the ALJ's mention of GAF scores in this case was harmless error in light of the substantial other record evidence supporting the ALJ decision. Remand is not warranted merely to request a perfect opinion. *See e.g., Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Plaintiff's RFC reveals that substantial evidence supports his conclusion and proper legal standards were applied in his analysis.

As a threshold matter, it is important to note that although an ALJ can consider opinions from acceptable medical sources when calculating a claimant's RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996). In formulating Plaintiff's RFC, the ALJ considered both treating and examining physicians' statements as to Plaintiff's ability to function, physical therapists' progress notes, the fact that Plaintiff's impairments were longstanding and yet did not prevent him for working for many years (including working overtime), the conservative nature of Plaintiff's treatment, Plaintiff's continued statements that treatment including medication improved his symptoms, and Plaintiff's daily activities. Although the ALJ accorded substantial weight to a consultative physician's opinion, such a decision was commensurate with both the applicable legal standards and, as outlined below, the other evidence of record as to each of Plaintiff's alleged impairments.

First, with respect to his shoulder pain, the ALJ properly found that surgery and physical therapy resulted in a significant reduction in pain and increase in mobility. (R. 18-19, 22-25, 107-11, 119). Although Plaintiff had extreme shoulder pain prior to December 2000, his condition improved steadily post-surgery and with continued physical therapy: (1) in December 2000, he had decreased pain and increased range of motion (R. 19, 125-26); (2) in January 2001, he had fairly a good range of motion, had returned to work, and was continuing therapy (R. 19, 118, 123); (3) by February 2001, he was doing quite well with minimal limitation in direct abduction and no pain with range of motion (R. 19, 118); and (4) by March 2001, he was pain-free and discharged from physical

therapy having achieved five out of six goals (R. 19, 118, 121, 122). Despite Plaintiff's complaint of left shoulder pain and stiffness when he was examined in May 2004 by Dr. Moizuddin, Plaintiff's range of motion of the neck was within normal limits and he had no cyanosis, no clubbing or edema of the extremities, and positive pedal pulses. (R. 19,133). Indeed, Dr. Moizuddin's examination revealed no other significant physical limitations.[4]

With respect to Plaintiff's diabetes, the ALJ properly noted consistent management of his condition. In 2000, Dr. John M. Kerr, III found that Plaintiff's blood sugars ranged between 80 and 150 (R. 18, 24, 117). In 2004, Dr. Moizuddin observed that Plaintiff managed his diabetes on his own without the need of a primary care physician for many years and in fact, had very good control of his blood sugars based upon a May 2004 log. (R. 19, 21, 132, 165).

With respect to Plaintiff's August 2004 ankle injury, the ALJ properly found consistent improvement. A post-injury examination revealed no evidence of diabetic neuropathy, intact pulses, and intact skin. (R. 20, 153). Two days later, Plaintiff had good range of motion of the right ankle despite moderate swelling and tenderness. (R. 20, 152). A month later, Plaintiff reported that he continued to do well and had minimal pain, swelling, or tenderness (R. 20, 152), while x-rays showed a fracture in good position with early healing and intact ankle mortise. (R. 20, 152). By November 2004, Plaintiff continued to do well and was more comfortable with an excellent range of motion of the right ankle and minimal pain and tenderness. (R. 21, 151). Follow up x-rays

---

[4] Neurological examination was within normal limits with coordination fine and grossly intact, a motor grip of 5/5, negative pronator drift, and sensory that was grossly intact. (R. 19-20, 134). Plaintiff was able to squat and heel/toe walk. (R. 20, 134). A Romberg test administered to Plaintiff was negative; and musculoskeletal examination showed normal range of motion in the upper and lower extremities with negative straight leg raising. (R. 20, 134).

revealed excellent alignment with healing, callus formation, and good and normal ankle mortise. (R. 21, 151).

With respect to back pain, the ALJ noted that Plaintiff reported Ibuprofen provided relief. Moreover, when Plaintiff was examined on March 28, 2005, treatment notes reveal that his back was normal, although he had some tenderness in the lumbar spine. (R. 21, 161). An examiner at the Eaton Family Chiropractic Clinic reported in March 2005 that Plaintiff appeared to be in good health and ambulated well without assistance. (R. 21, 189).

Regarding Plaintiff's mental impairments of depression and anxiety, the court finds that, for the reasons outlined earlier and the additional reasons below, the ALJ properly relied on the psychiatric examinations of record to determine that Plaintiff's subjective complaints were not entirely credible. (R. 20-25). On October 11, 2004, physicians at Capstone Rural Health Center indicated that Plaintiff's psychiatric examination was normal. (R. 21, 163). Sources at Northwest Alabama Mental Health Center also reported that Plaintiff was doing "okay" and an increase in his medications had been effective in decreasing his anxiety and depression. (R. 20, 23, 143). Plaintiff also reported in June 2005 that Paxil "really worked," that he had more energy, was sleeping well, had a good appetite, and exhibited no suicidal ideations or delusions. (R. 20, 23, 198). Moreover, Plaintiff's own testimony revealed his ability to work overtime in March 2001 and steadily for ten years without requiring mental health treatment. (R. 23, 121). Thus, the ALJ properly discredited Plaintiff's subjective statements that his mental impairments were, and have been, utterly disabling for a great length of time.

Finally, in formulating Plaintiff's RFC, the ALJ properly took into account his daily activities in assessing all of Plaintiff's subjective complaints, noting that Plaintiff reported he took short walks,

listened to music and the birds outside, performed minimal household chores, shopped for groceries, and drove once a week to Wal-Mart to pick up his medications. (R. 25, 69-70, 89).

For all of these reasons, the court finds that the ALJ properly analyzed the medical evidence of record, making clear the weight he accorded that evidence. Accordingly, the court concludes that it is clear from the evidence of record that the ALJ's RFC finding that Plaintiff could perform a restricted range of light work was not merely "made up . . . without the support of any medical opinion" (Doc. # 11, at 29), but rather was supported by substantial evidence in the medical record.

### C.   The ALJ's Consideration of Plaintiff's Subjective Complaints

Finally, Plaintiff claims that the ALJ erred in his evaluation of Plaintiff's pain and other subjective symptoms when he found:

> [Plaintiff's] statements concerning his impairments and their impact on his ability to work are not entirely credible in light of his assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, and the medical history . . . . [T]he objective medical evidence does not support the severity of pain and other subjective symptoms alleged by the claimant. Additionally, none of the claimant's conditions are of the severity that they could reasonably be expected to give rise to the claimant's alleged pain and other symptoms.

(Doc. # 11, at 30 (citing R. 22-23)).  Plaintiff contends that the ALJ's credibility finding is "vague," "unsupported," and due to be disregarded while his pain testimony should be "accepted as true." (Doc. # 11, at 31-32).

The Act and its regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When a claimant alleges disability through subjective complaints of pain or other

symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the Commissioner of Social Security fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating Plaintiff's allegations of pain. Here, the ALJ quoted 20 C.F.R. § 404.1529 and the Eleventh Circuit caselaw outlining the above method for assessing subjective complaints of pain. (R. 22-23). The ALJ's assessment of Plaintiff's credibility included a comprehensive three-page look at the opinions of his physicians and an individualized assessment of whether each doctor's opinion was supported by the medical evidence. (R. 22-25). In light of those standards and the supporting medical evidence, the ALJ considered Plaintiff's subjective complaints and determined that those statements concerning his impairments, pain, and their impact on his ability to work are not entirely credible in light of Plaintiff's response to conservative medication and therapy as shown in the medical evidence (R. 105, 118, 119, 120, 132, 134, 143, 145, 161, 198), Plaintiff's ability to work (even overtime) in the past in spite of his ongoing medical conditions (R. 121, 126), the limited objective findings[5] in the medical evidence compared with Plaintiff's subjective complaints (R. 118, 122, 133-34, 144, 151-53, 197), and Plaintiff's testimony and statements regarding his activities of daily living (R. 69-70, 89). *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989)(finding that where, as here, the ALJ specifically

---

[5] Although Plaintiff argues the ALJ applied improper standards because he allegedly "required" objective evidence of the pain itself, that is simply not the case. The ALJ's statements that "the objective medical evidence does not support the severity of pain and other subjective complaints alleged by the claimant" and that "none of the claimant's conditions are of the severity that they could reasonably be expected to give rise to the claimant's alleged pain and other symptoms," were not erroneous, but a *proper* application of the Eleventh Circuit pain standard and the Social Security regulations. *See Richardson v. Barnhart*, No. 02-16269-II (11th Cir. July 10, 2003)("[T]he Commissioner's own regulations, and our case law, direct the ALJ to look for objective confirmation of the severity of the pain and its limiting effects on the claimant . . . The ALJ's demand for objective medical evidence, to which Richardson objects, was nothing more than a proper application of the second prong of the pain standard.")(emphasis added)(copy attached)(citing 20 C.F.R. § 404.1529(a), (c) and *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

articulates at least three reasons for rejecting the claimant's subjective complaints of pain, the ALJ properly discredited Plaintiff's testimony).

Based upon the extensive analysis outlined above, the court finds that substantial evidence supports the ALJ's decision that Plaintiff's subjective allegations were not credible and that he retained the ability to perform a restricted range of light work.

## VI.  Conclusion

A thorough and complete review of all of the evidence of record – including the documentary evidence and Plaintiff's testimony – reveals that proper legal standards were applied and substantial evidence supports the ALJ's determination that Plaintiff is not disabled. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this     11th     day of March, 2008.

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　**R. DAVID PROCTOR**
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE